**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| PAULA MIKESH, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>COASTAL WASTE & RECYCLING, INC.,<br><br>Defendant. | No. 9:26-cv-00989-DCN<br><br>**ORDER** |

The following matter is before the court on defendant Coastal Waste & Recycling, Inc's ("Coastal Waste") motion to dismiss, ECF No. 6. For the reasons set forth below, the court grants the motion in part and defers ruling on the motion in part.

## I. BACKGROUND

### A. Factual Background

This dispute arises from a landfill's emission of undesirable odors into a nearby neighborhood. Coastal Waste operates the Barnwell Resources Landfill (the "Landfill")—a "construction and debris landfill located on Lady's Island in Beaufort County, South Carolina." ECF No. 5, Amend. Compl. ¶ 3. Plaintiff Paula Mikesh ("Mikesh") resides near the landfill and finds the odors emitted therefrom to be objectionable. Id. ¶ 8.

Mikesh alleges that the noxious odor stems from hydrogen sulfide gas emitted from the Landfill, which generates "a strong sulfurous odor commonly described as smelling like rotten eggs." Id. ¶¶ 20–21. Residents first became concerned about the persistent sulfurous odor as early as 2024. Id. ¶ 31–32. By January of 2025, the South

Carolina Department of Environmental Services ("DES"), the agency responsible for regulating the Landfill, allegedly began a complaint-driven investigation into the Landfill's odor emissions. Id. ¶ 32. At the outset of the investigation, Mikesh claims a DES inspector "detected hydrogen sulfide odors at multiple offsite locations." Id. ¶ 34. In the months that followed, inspectors purportedly documented the odor's expansion into the surrounding area. Id. ¶¶ 35–38. Mikesh alleges that by June of 2025, "DES observed erosion, washouts, and inadequate drainage features on the Landfill surface, conditions that DES recognized as increasing the likelihood of waste exposure and odor generation." Id. ¶ 39. In response to DES involvement, Coastal Waste implemented remedial measures that, according to Mikesh, were "temporary or incomplete." Id. ¶ 42. At an unspecified time, DES implemented an air "monitoring program[,]" employing hydrogen sulfide sensors throughout the surrounding community that documented hydrogen sulfide levels exceeding "150 parts per billion[.]" Id. ¶¶ 46–49. That number far exceeds "typical background concentrations[ ]" according to Mikesh. Id.

Mikesh seeks to represent a proposed class of similarly situated individuals "who, at any time from January 1, 2025" until the present day, have "owned residential real property located within the geographic area bounded on the north by Springfield Road, on the west by Brickyard Point Road South, on the east by Middle Road and Walnut Hill Street, and on the south by Marsh Drive, as reflected in Beaufort County tax and GIS records." Id. ¶ 87. This area encompasses a large number of properties and potential class members, perhaps "in the hundreds or more." Id. ¶ 91. All proposed class members have purportedly suffered similar odor-related harms, including: infiltration of the smell into their homes, cessation of normal outdoor activities during odor events, and

absorption of the odor into household items requiring "additional cleaning, ventilation, or other mitigation efforts." Id. ¶ 63–74. Taken together, these "distinct property-based harms" have "diminished the fair rental value" of impacted properties and, additionally, "caused temporary diminution in the market value" of those properties. Id. ¶¶ 69–71.

**B. Procedural History**

Mikesh initially brought suit in the Beaufort County Court of Common Pleas on January 27, 2026. ECF No. 1-1, Compl.; Mikesh et al. v. Coastal Waste & Recycling, Inc., No. 2026-CP-07-00216 (Beaufort Cnty. Ct. C.P. Jan. 27, 2026). Coastal Waste removed the action to this court on March 6, 2026, invoking jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Thereafter, on March 27, 2026, Mikesh filed an amended complaint. ECF No. 7, Amend. Compl. She asserts three substantive causes of action therein for negligence, negligence per se, and nuisance. Id. ¶¶ 103–135. She additionally seeks punitive damages and injunctive relief. Id. ¶¶ 136–140.

Coastal Waste moved to dismiss all causes of action and additional relief sought on April 10, 2026. ECF No. 6. Mikesh responded in opposition on April 24, 2026, ECF No. 7, to which Coastal Waste replied on May 1, 2026, ECF No. 9. The court held a hearing on the motion on July 16, 2026. ECF No. 17. As such, the motion is fully briefed and now ripe for the court's review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v.

Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

## III. DISCUSSION

Coastal Waste argues that each of Mikesh's three claims are subject to dismissal pursuant to Rule 12(b)(6). The court addresses each claim in turn.

### A. Negligence

Coastal Waste asserts that Mikesh has failed to plausibly allege any of the elements required to state a claim of negligence under South Carolina law. ECF No. 6 at 12–17. The court focuses its analysis on the damages element and concludes that Mikesh has failed to plausibly allege legally cognizable damages. See Babb v. Lee Cnty. Landfill

SC, LLC, 747 S.E.2d 468, 481 (S.C. 2013) ("To prevail on a negligence claim, a plaintiff must establish duty, breach, causation, and damages.").

In Babb, the South Carolina Supreme Court answered certified questions in a case involving a landfill's allegedly negligent emission of objectionable odors. Id. at 471–72, 480. Addressing the damages element of negligence, the Court held that "while it may be possible for a plaintiff to recover in negligence for offensive odors, we stress that such a claim would have to satisfy the elements of negligence like any other claim, and the mere offensive smell of odors would not be enough." Id. at 480–81 (emphasis in original). The Court noted that "under South Carolina law, the damages element [of negligence] requires a plaintiff to establish physical injury or property damage[,]" while damages "for emotional or mental suffering are typically not recoverable, unless there is some physical manifestation of the emotional distress." Id. at 481. The court thus deemed "the mere annoyance, inconvenience, or discomfort a plaintiff may suffer from offensive odors" to be insufficient "to establish a negligence claim." Id.

After Babb was decided, a federal court in this district denied a defendant landfill's motion to dismiss, rejecting its argument that the plaintiff had failed to plausibly allege recoverable damages. Johnston v. Anderson Regional Landfill, LLC, 725 F. Supp. 3d 527, 540 (D.S.C. 2024). The court emphasized that the plaintiffs had alleged "a series of specific medical issues caused by Defendants' alleged actions, as well as damage to their property." Id. These medical issues included "extremely unpleasant temporary symptoms such as headaches, nausea, coughing, choking, irritation to membranes, and mental distress[.]" Id. Despite underscoring the plaintiffs' physical symptoms, the court did not tether its analysis explicitly to Babb's holding that the

damages element of a negligence claim requires a showing of "physical injury or property damage." See Babb, 747 S.E.2d at 481; Johnston, 725 F. Supp. 3d at 540–41. That said, the court discussed Babb in other portions of its order, and its conclusion regarding damages aligns with the physical injury or property damage requirement set forth in Babb. See Babb, 747 S.E.2d at 481; Johnston, 725 F. Supp. 3d at 536–39.

Here, Mikesh alleges that Coastal Waste's odor emissions have resulted in the following injuries:

> ¶ 64: Defendant's repeated offsite odor emissions have directly interfered with these property rights by rendering homes and yards unusable or less usable during odor events.
>
> ¶ 65: Defendants' emissions have not remained confined to the outdoor environment. Instead, noxious odors and associated airborne contaminants have repeatedly infiltrated Plaintiff's and Class Members' homes through ordinary air exchange pathways, including doors, windows, and HVAC systems, resulting in persistent indoor odor conditions that are not experienced by the public at large.
>
> ¶ 67: Indoor odor intrusions have impacted daily indoor activities and diminished Plaintiff's and Class Members' enjoyment of their homes, including by interfering with the ordinary use of indoor living spaces.
>
> ¶ 68: Once inside, these odors do not immediately dissipate with changing outdoor conditions but can remain present within enclosed indoor environments and become absorbed into household materials such as fabrics, carpets, and furnishings, requiring additional cleaning, ventilation, or other mitigation efforts.
>
> ¶ 70: These conditions . . . constitute distinct, property-based harms, including contamination of indoor air and absorption of odors into personal property and structural components of the home.
>
> ¶ 71: The recurring odor conditions have diminished the fair rental value of affected residential properties during the Class Period defined herein.

> ¶ 72: In addition, the odor conditions have caused temporary diminution in the market value of affected residential properties during the Class Period.

Amend. Compl. ¶¶ 64–65, 67–68, 70–72.

Coastal Waste submits that the foregoing allegations constitute precisely the type of odor-based "annoyance[s]" that the South Carolina Supreme Court considered non-cognizable in Babb. ECF No. 6 at 17. Coastal Waste directly addresses paragraph 68's allegation that odors were "absorbed into household materials . . . requiring additional cleaning, ventilation, and other mitigation efforts[,]" arguing that these measures were implemented merely to "remove odor, not to repair physical damage[ ]" to property. Id. (emphasis in original). Coastal Waste also distinguishes Johnston, arguing that Mikesh makes no allegation of medical issues or physical symptoms—unlike the plaintiffs in that case. Id. at 13; see Johnston, 725 F. Supp. 3d at 540. In opposition, Mikesh provides little in the way of a substantive response to Coastal Waste's damages argument or the authorities it cites. See ECF No. 7 at 6–9. Instead, she simply re-states the amended complaint's allegations, while adding conclusory labels, like "negligent, grossly negligent, reckless, careless, wanton, and willful[,]" to those allegations. Id. at 8. To specifically address damages, Mikesh only musters that "Plaintiff also alleges damages to her property caused by Defendant's alleged actions." Id.

For damages allegations to sustain a claim for negligence, Babb requires "physical injury or property damage." 747 S.E.2d at 481–82, accord Chestnut v. AVX Corp., 776 S.E.2d 82, 84 (S.C. 2015) (reiterating Babb's requirement that a plaintiff can only maintain a negligence suit based upon offensive odors through allegations of "either physical injury [to the plaintiff] or property damage.") (quotation marks omitted) (alteration added in Chestnutt). The mere smell of an offensive odor, however, is not

sufficient. Babb, 747 S.E.2d at 480–81. Mikesh does not allege that she suffered any physical symptoms as a result of the alleged odor emissions. But see Johnston, 725 F. Supp. 3d at 540 (finding the plaintiffs' allegations of physical symptoms arising from alleged noxious odor emissions to plausibly establish legally cognizable damages under South Carolina law). As for property damage, Mikesh alleges that the odor was "absorbed into household materials such as fabrics, carpets, and furnishings, requiring additional cleaning, ventilation, or other mitigation efforts." Amend. Compl. ¶ 68. The court finds this allegation of odor permeation into household items to be a complaint about "the mere offensive smell" itself—and not property damage as contemplated under Babb. And efforts undertaken to reduce or remove those odors represent but some of "the mere annoyances, inconveniences, or discomforts a plaintiff may suffer from offensive odors."[1] See Babb, 747 S.E.2d at 481 (cleaned up).

It bears emphasis that—despite Coastal Waste arguing that Babb forecloses the viability of Mikesh's damages allegations—Mikesh does not even cite Babb in the portion of her brief dedicated to defending her negligence claim and does not otherwise substantively engage with Coastal Waste's well-reasoned argument premised on Babb. See ECF Nos. 6 at 17; 7 at 6–9. As such, the court finds that Mikesh has failed to plausibly allege legally cognizable damages under South Carolina law.[2] Because a

---

[1] Whether an offensive odor could so contaminate personal property so as to render it "physically damaged" is a question the court need not answer; Mikesh does not plausibly allege that the odors permeated household items to such an extent. See Amend. Compl. ¶ 68.

[2] The court acknowledges that the amended complaint alleges "diminished fair rental value of the affected properties[.]" Amend. Compl. ¶ 70. The South Carolina Supreme Court has not recognized stigma damages, i.e., damages resulting from devaluation of property, as recoverable in environmental negligence suits, and the recoverability of such damages is an open question in this state. See Chestnut, 776

failure to plead any one of the elements of a negligence claim "renders the cause of action insufficient," the court will dismiss Mikesh's negligence claim. See S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc., 346 S.E.2d 324, 325 (S.C. 1986).

**B. Negligence Per Se**

Next, the court addresses the viability of Mikesh's negligence per se claim. Under South Carolina law, the doctrine of negligence per se allows the standard of care to be "defined as that required by statute, rather than as the usual reasonable person standard." Denson v. Nat'l Cas. Co., 886 S.E.2d 228, 231 (S.C. 2023) (quoting Cuyler v. United States, 362 F.3d 949, 952 (7th Cir. 2004) (J., Posner)). That statutory standard "may establish an essential element for a negligence action; however, it does not provide the cause of action, but rather the standard of care, statutory or otherwise, is merely an element of proof that comes into play after an action has been rightfully commenced pursuant to [some] preexisting common-law cause of action." Denson, 886 S.E.2d at 232 (quoting 57A Am. Jur. 2d Negligence § 683 (2022) (emphasis added in Denson)); see also Moore v. Waffle House, Inc., 2025 WL 1880244, at *5 (D.S.C. Apr. 15, 2025) (noting that, with a claim of negligence per se, "the statute does not create the duty but establishes the 'extent and nature of the duty.' " (quoting Madison ex rel. Bryant v. Babcock Ctr., Inc., 638 S.E.2d 650, 656 (S.C. 2006))). Because the doctrine merely serves to "set[ ] the standard of care by which the defendant may be judged in the

S.E.2d at 84. Despite Coastal Waste challenging the viability of such damages, see ECF No. 6 at 17, Mikesh failed to respond to that argument, see ECF No. 7 at 6–9, thereby conceding the point, see Matter of V. Dorchester St. Jet Skis, Inc., 2026 WL 1596175, at *2 (D. Md. Jun. 3, 2026). The court will not fashion a response for her. As such, the court will still dismiss Mikesh's negligence claim despite allegations of diminished rental value because she fails to justify or otherwise address the recoverability of such damages.

common-law action," Mikesh's invocation of negligence per se does not alleviate her burden of pleading the remaining elements of a negligence claim. Denson, 886 S.E.2d at 232 (citation omitted); see also Moore, 2025 WL 1880244, at *5 (observing that claims of "negligence per se need not be pleaded separately"). As such, Mikesh's negligence per se claim is subject to dismissal for the same reason as her ordinary negligence claim—her failure to plead cognizable damages. See Booz-Allen & Hamilton, Inc., 346 S.E.2d at 325 ("The absence of any one of" the elements of negligence claim "renders the cause of action insufficient.").

**C. With or Without Prejudice**

Coastal Waste states multiple times in its motion that it is seeking dismissal with prejudice, ECF No. 6 at 21, 24, 30, and Mikesh fails to respond with any reason that dismissal with prejudice would be inappropriate, see ECF No. 7. Whether to dismiss an action with prejudice is a matter within the district court's discretion in this circuit, and the court need not provide a "definitive ruling" on a motion to dismiss before entering a dismissal with prejudice. Abdul-Mumit v. Alexandria Hyundia, LLC, 896 F.3d 278, 292 (4th Cir. 2018) (rejecting approach of other circuits that requires it to be "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted[.]" (quoting Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. And Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015))). As noted above, Mikesh has waived arguments that would support legally cognizable damages for diminution in value of her property (assuming that such damages are even recoverable). See supra pp. 8–9 n.2. Moreover, she failed to plead physical injury or property damage and failed to respond to Coastal Waste's arguments as to the insufficiency of her damages allegations under Babb. See supra p. 8.

And finally, she failed to respond to Coastal Waste's requests for dismissal with prejudice. In light of these failings, the court will dismiss the negligence and negligence per se claims with prejudice.

**D. Nuisance**

The court now turns to address Mikesh's nuisance claim. The court ultimately declines to resolve the viability of her nuisance claim at this time. Instead, the court finds that Coastal Waste's motion raises several difficult questions of South Carolina nuisance law. The court will identify those questions below and offers the parties two avenues on which to proceed. First, the court can certify these questions to the South Carolina Supreme Court for a definitive resolution of the proper application of state law. The other option would be for the court to venture an Erie-guess and predict how the South Carolina Supreme Court would resolve the questions.

**1. Public or Private Nuisance?**

Whether Mikesh's claim is classified as a private or public nuisance is critical, as only the latter is subject to the "special injury" requirement under South Carolina law. See Carnival Corp. v. Ansonsborough Neighborhood Ass'n, 753 S.E.2d 846, 852 (S.C. 2014). Despite the significance of the issue, the parties devote little attention to it. Coastal Waste only offers that "[a] condition that affects an entire neighborhood or community constitutes a public nuisance[ ]" without any corresponding citation. ECF No. 6 at 21; see also ECF No. 9 at 7–8 (claiming that Mikesh asserts a public nuisance without any citation). Mikesh acknowledges that the distinction between public and

private nuisance but does not take a clear position as to how her own claim should be designated. See ECF No. 7 at 14.

"The difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing or activity itself." Homes Sales, Inc. v. City of North Myrtle Beach, 382 S.E.2d 463, 469 (S.C. Ct. App. 1989). Rather, a nuisance is private "only because the individual as distinguished from the public has been or may be injured." Id. (framing the public versus private nuisance inquiry as turning on "whether the alleged nuisance of the City offended the public at large or just Home Sales."). By contrast, "to be deemed public, the nuisance must effect a number of people." Overcash v. S.C. Elec. & Gas Co., 588 S.E.2d 116, 121 (S.C. Ct. App. 2003), rev'd on other grounds by 614 S.E.2d 619, 622 (S.C. 2005) (holding that "particular injury requirement" of public nuisance claims "is only satisfied by injury to the individual's real or personal property."). Furthermore, a public nuisance "must be in a public place or where the public frequently congregates, or where members of the public are likely to come within the range of its influence[,]" as to opposed "a remote and infrequented locality[.]" Neal v. Darby, 318 S.E.2d 18, 23 (S.C. Ct. App. 1984) (finding a landfill to constitute a public nuisance "by virtue of its location near residential areas . . . as well as its influence on members of the public.").

More dated opinions from the South Carolina Supreme Court suggest that the analytical distinction between a public and private nuisance is not so straightforward. For example, when analyzing the distinction in 1915, the Court explained:

> [W]hen a plaintiff states, as his cause of action, that which is prima facie only a private nuisance, even though it may appear from his complaint that a determinate number of other persons are or may be similarly affected by it, for a nuisance may affect a considerable number of persons in the same

> manner and yet not be a public nuisance, and, in that event, if the individuals so affected were denied the private remedy of an action, they would be without any remedy at all, because, if it is not a public nuisance, it is not subject to indictment.

Woods v. Rock Hill Fertilizer Co., 86 S.E. 817, 820 (S.C. 1915) (noting that the "complaint will be searched in vain for any allegations of fact which show that the things complained of amount to a public nuisance."). Forty years later, in Bowlin v. George, the South Carolina Supreme Court quoted the previous passage from Woods with approval when holding that a junk yard was a private nuisance because the plaintiff was "not complaining of the violation of a right of a public nature or one held in common with the rest of the public." Bowlin v. George, 123 S.E.2d 528, 532 (S.C. 1962). Rather, the plaintiff "allege[d] the violation of a private right, namely the interference with the reasonable enjoyment of his property and the depreciation in its value." Id. at 529, 532 (describing the complaint to specifically allege that "plaintiff and his wife ha[d] been made to endure much discomfort and inconvenience" from the junkyard because their home had become "infested with mosquitos . . . bred on the premises occupied by the defendant."). At first blush, the foregoing cases appear to be in tension with subsequent precedent indicating that the distinction between a public and private nuisance is simply the number of people affected. Compare id. at 531 ("[F]or a nuisance may affect a considerable number of persons in the same manner and yet not be a public nuisance[.]" (quoting Woods, 86 S.E. at 820)), with Home Sales, 382 S.E.2d at 469. But, when considering Woods and Bowlin in context, they can be more accurately read as a rejection of the view that a defendant can defeat a narrowly pleaded private nuisance action by simply identifying a small number of nearby landowners whose properties may also be negatively impacted by the nuisance. See Woods, 86 S.E. at 820 (characterizing

action as one for private nuisance "even though it may appear from his complaint that a determinate number of persons are or may be similarly affected by it[.]") (emphasis added); Bowlin, 123 S.E.2d at 531 ("Whether the junk yard in question is or may become a public nuisance need not be decided, for under the allegations of the complaint it is as to respondent a private nuisance.").

The court finds no precedent from the South Carolina Supreme Court explicitly addressing the precise analytical distinction between a private and public nuisance, save for a case decided in 1909. See Woodstock Hardwood & Spool Mfg. Co. v. Charleston Light & Water Co., 63 S.E. 548, 556 (S.C. 1909) (observing that "the distinction" between private and public nuisance claims "depend[s] upon the number affected[.]"). While Woods and Bowlin touch on the question, those cases provide more confusion than clarity when read in light of subsequent precedent from the South Carolina Court of Appeals. That being the case, the court can certify some formulation of the following question to ensure proper application of South Carolina nuisance law:

> Is a nuisance claim necessarily one for public nuisance when the plaintiff alleges that the nuisance impacts perhaps hundreds or more putative class members?

Absent certification, the court will predict how the South Carolina Supreme Court would answer this question.

**2. Special Injury Requirement**

Should it ultimately be determined that Mikesh's claim is for public nuisance, it would then be subject to a special injury requirement under South Carolina law. Typically, "only the State" may assert a cause of action for public nuisance. Carnival, 753 S.E.2d at 852 (S.C. 2014). The claim is only available to a private person when she

has "suffered a special injury to his real or personal property." Id. "Special injury" requires " 'individual or specific damage in addition to that suffered by the public,' . . . and must be 'of a special character, distinct and different from the injuries suffered by the public generally[.]' " Id. (first quoting Brown v. Hendricks, 45 S.E.2d 603, 605 (S.C. 1947), then quoting Bowlin, 123 S.E.2d at 530); see also Huggin v. Gaffney Dev. Co., 92 S.E.2d 883, 884 (S.C. 1956) (phrasing special injury as requiring "damage different in kind and not merely in degree from that suffered by the public at large.").

Brown, a South Carolina Supreme Court case from 1947, concerned plaintiffs who were unable to access their property after the defendant erected a structure that blocked a public alley. 45 S.E.2d at 604. The plaintiffs brought a claim for public nuisance, and the Court determined that the special injury requirement was satisfied because "[t]he injury to the general public [was] simply the deprivation of the right of passage over and through the alley[,]" while the "additional injury" to the plaintiffs was "the complete obstruction of access to their property[.]" Id. at 604–05, accord Huggin, 92 S.E.2d at 884–85 (holding that plaintiff had alleged a special injury through allegations that the defendant had obstructed a public highway and that plaintiff had "purchased his farm with the intention of cultivating it with labor conveniently located on or near [the highway] but since the obstruction . . . had been unable to get labor from this area causing a crop loss of $150.00[.]").

In a more recent case, the South Carolina Supreme Court again had occasion to address the special injury requirement. See Carnival, 753 S.E.2d at 852. The plaintiffs in Carnival were citizen groups representing the interests of residents and property owners in downtown Charleston. Id. at 848–49. They brought a claim for public nuisance

against Carnival Corporation after it located a cruise port adjacent to the city's historic district. Id. at 849. The plaintiffs alleged various injuries arising from the port's location, including: increased pollution, crowds, noise, and traffic; disrupted views of the city's historic skyline when cruise ships were in port; and reduced use and enjoyment of their homes, neighborhoods, and protected structures. Id. at 851. The Court observed that "[a]ll members of the public suffer from and are inconvenienced by traffic congestion, pollution, noises, and obstructed views, and Plaintiffs have not alleged they suffer these harms in any personal, individual way." Id. Because the plaintiffs had failed "to set forth any injury they or their members have suffered that is different from the injury suffered by the public generally[,]" the Court held that the special injury requirement was not satisfied. Id. at 852.

Coastal Waste argues that Mikesh has alleged a "a public, community-wide environmental condition without a special injury different in kind[ ]" because she alleges "the same injury as any property owner capable of detecting odor at their property." ECF No. 6 at 22. "At most," Coastal Waste continues, "some homes may experience odors more intensely or frequently depending on proximity or weather conditions[,]" which are "differences in degree, not differences in kind." Id. The court agrees with Coastal Waste that Mikesh plainly alleges that she and the putative class members suffer the same injuries. Amend. Compl. ¶ 98 (pleading that the impact of Landfill's odor emissions "are subject to common proof and will generate common answers for all Class Members."). She alleges the harm from the odor emissions to impact both "Plaintiff and class

members" without exception. See id. ¶¶ 65, 67, 73–74, 93, 99, 102, 105, 115, 117, 120–25, 127, 133–34.

Mikesh acknowledges the special injury requirement in her opposition brief but makes no attempt to explain how her allegations satisfy that requirement (or to even state whether she is asserting a claim for public or private nuisance). ECF No. 7 at 13–16.

Despite Mikesh's failure to substantively engage with the merits of Coastal Waste's argument, the court finds it difficult to determine whether Mikesh has alleged a special injury. First, Coastal Waste's argument raises the question of whom Mikesh should be compared to in assessing whether she has suffered a special injury. If Mikesh's injuries are compared to those of other nearby property owners, then her class action allegations would necessarily mean that she has not suffered a distinct injury from the putative class members.[3] See Amend. Compl. ¶¶ 63–74, 92–93, 97–99. If, however, Mikesh's property-based injuries are compared to injuries suffered by members of the public who do not own property in the Class Area, then her injury could be distinct. That said, this approach would make the special injury requirement not much of a requirement at all—as a property owner will often have a distinct injury as compared to one who does not own property impacted by the nuisance.

The South Carolina Supreme Court in Carnival did conclude that the special injury requirement was not satisfied despite the plaintiffs having alleged "reduc[ed] . . .

---

[3] While not a South Carolina appellate case, the approach taken by the district court in Johnston suggests that a plaintiff alleging the same property-based injuries across an entire community fails to satisfy the special injury requirement. See 725 F. Supp. 3d at 536–37 (concluding that the plaintiffs did not allege a special injury due to their failure to "distinguish[ ] the injuries to their real or personal property from the injuries of every other person living in the surrounding community[.]").

use and enjoyment of . . . their homes, neighborhoods, and protected structures[.]" See 753 S.E.2d at 851–52. Because this ostensibly property-based injury was deemed to be "no different from the injury suffered by the public generally," the same conclusion with respect to Mikesh's property-based injuries could follow here. See id. at 852. That said, the downtown residents' allegations in Carnival, as described in the opinion, appear to have been pleaded in a way that largely ignored any property-specific impacts of the cruise port. See id. at 851. Thus, the Court's ultimate conclusion on the special injury requirement may simply reflect the fact that the downtown residents had not addressed property-specific impacts with sufficient depth or specificity—as opposed to establishing a rule as to whether the differences in the injuries of property owners and non-property owners can constitute a special injury.

Older opinions of the South Carolina Supreme Court, which hold that a special injury existed when plaintiffs could not access their own properties due to the blockage of a public right of way, provide little guidance in a case like this one, where the alleged nuisance is an odor impacting a larger geographic area. See Brown, 45 S.E.2d at 604–05; Huggin, 92 S.E.2d at 884–85. Moreover, the conclusion that property-based injuries were sufficient to constitute special injury in Brown and Huggin is difficult to square with the conclusion that property owners did not suffer a special injury when compared to the injuries of the general public in Carnival. Compare Brown, 45 S.E.2d at 604–05, and Huggin, 92 S.E.2d at 884–85, with Carnival, 753 S.E.2d at 851–52.

As such, the court finds that the contours of the special injury requirement are difficult to define under current South Carolina Supreme Court precedent, and those precedents are equally as difficult to apply in a case involving perhaps hundreds of

putative class members. Therefore, the court can certify to the South Carolina Supreme Court some formulation of the following questions to clarify how the special injury requirement should be applied in this context:

> (1) When a putative class action nuisance suit alleges that hundreds of property owners residing near the alleged nuisance suffer injury in the form of diminished property values, which group of persons should the plaintiff's injuries be compared to in assessing whether she has suffered a "special injury?"
>
> (2) Does the Court's opinion in Carnival establish that property owners adversely impacted by an alleged public nuisance do not suffer a distinct injury from the non-property owning general public, even where a plaintiff property owner explicitly pleads diminished property value?

As noted above, the only alternative to certification would be for the court to make a prediction as to whether Mikesh has alleged a special injury under South Carolina law.

If both parties agree as to how the court should proceed, they are ordered to inform the court of their agreement within fourteen (14) days of the issuance of this order.

If the parties take different positions as to whether the court should certify the foregoing questions, each party shall file briefing in support of their position by December 1, 2026.[4]

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** in part Coastal Waste's motion to dismiss as to Mikesh's claims for negligence and negligence per se with

---

[4] Because the court defers ruling on the viability of Mikesh's nuisance claim, the court also defers ruling on Coastal Waste's request to dismiss or strike Mikesh's class action allegations. See ECF No. 6 at 25–28. The court also defers ruling on Coastal Waste's request to dismiss Mikesh's claim for "injunctive and declaratory relief" and her punitive damages allegations. See Compl. ¶¶ 139–42; ECF No. 6 at 28–30.

prejudice. The court **DEFERS** ruling on Coastal Waste's motion to dismiss as to Mikesh's nuisance claim and **ORDERS** the parties to file responses to this order in accordance with the instructions above. The court **DEFERS** ruling on Coastal Waste's motion to dismiss as it relates to Mikesh's class action allegations, requests for injunctive and declaratory relief, and punitive damages allegations.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 12, 2026**
**Charleston, South Carolina**